ALFRED S. LASCELLES *et al.*, Respondents; *v.* JOHN MILLER,. Appellant.

*Supreme Court, First Department, General Term, November 7, 1889.*

*Pleadings. Counterclaim.*—In an action for the purchase price of oranges, etc., cut contrary to the order, the vendee, on acceptance, may counter-claim the damages caused by the vendor's departure from the terms of such order.

Appeal from a judgment entered upon a verdict rendered at circuit in favor of the plaintiffs, and from order denying motion for new trial.

*John A. Deady*, for appellant.

*A. Gallup*, for respondent.

VAN BRUNT, P. J.—This action was brought to recover upon a contract made by the defendant with plaintiffs for the purchase of bananas and oranges, to be shipped by the steamer Blanche Henderson, owned by the defendant, at Jamaica, West Indies.

The plaintiff and defendant had some conversation in reference to the probabilities of procuring a cargo of bananas at Jamaica, which resulted in the plaintiffs telegraphing to their agent at Jamaica, on the 8th of November, 1886, in pursuance to the instructions of the defendant to secure, immediately, oranges and bananas "which must not be cut until the steamer arrives."

Mr. Lascelles, one of the plaintiffs, testified that on the 19th of November he had another conversation with the defendant, who had called at the office and inquired if any-

thing had been heard of the arrival of the Blanche Henderson. Mr. Lascelles states that he told him that up to that time they had no cable advice of her arrival, and he also told him at the same time that they had received a letter from their Kingston agents, dated the early part of November, in which they said that they had their telegram ordering the fruit, and that it would be next to impossible to carry out the proviso of "not cutting the fruit before the vessel arrived."

Mr. Lascelles further testifies that the defendant told him to send a telegram to Jamaica to inquire whether the Blanche Henderson had arrived, and that he informed the defendant that his agent had written him that the proviso in regard to cutting the fruit before the vessel arrived could not be carried out.

The defendant did not make any reply to Mr. Lascelles. The steamer did not arrive at Kingston until the forenoon of the 22d of November, and was not ready to load until the 23d. The bananas had been cut and on the wharf of Kingston several days before the steamer arrived, and the bananas which were shipped on board of the steamer at other points in Jamaica had also been cut and ready for shipment several days before the arrival of the steamer.

The bananas were received on board by the captain of the steamer and were brought to New York, and upon their arrival both bananas and oranges were found to be in a very bad condition, almost worthless, realizing upon the sale thereof the sum of $1,600 only.

The plaintiffs brought this action for the price agreed to be paid for the fruit, and upon the trial the only question which was submitted to the jury by the learned court below was, whether or not the jury were satisfied from the evidence that the parties had agreed to so modify the original order that was given that the condition that the bananas should not be cut until after the arrival of the steamer was not to be insisted upon, and if they had not, what damages the defendant had sustained by the breach of the instruction not to cut the bananas until arrival of vessel.

It is claimed upon the part of the appellants that there was no evidence whatever which justified the submission of any question as to the modification of the contract to the jury, and it would appear from the previous part of the charge of the learned judge that such was his opinion, because he states that it was undisputed that the first order for these bananas was that they should be cut after the steamer arrived, that the plaintiff said that he would not undertake to carry that out, but that the defendant gave him another order and he told him to telegraph such order to Jamaica. Plaintiff said they would, but did not know that they could make an agreement on that basis.

If this was the condition of the evidence, then no authority was given to the plaintiffs to give any other order than that which was contained in the telegram, namely that the bananas should not be cut until after the arrival of the steamer. It does not appear that prior to the 18th or 19th of November, and after these bananas had been cut, that any communication was made to the defendant that the plaintiff had received word from his agents that this part of the order could not be complied with.

We have examined the record in vain to find any other instruction given by the defendant to the plaintiffs than that the bananas must not be cut prior to the arrival of the steamer.

It is true that the defendant was informed that it would be next to impossible to comply with this order; but notwithstanding this statement the defendant in no way altered or modified his instructions, neither was any such modification hinted at in the telegram authorized to be sent. The defendant therefore took the risk in case of the impossibility of procuring the bananas under the condition which he had placed upon the order that his ship should not receive the desired cargo. And this was a risk he had a right to assume or not assume.

There was no authorization given as far as we can ascertain

on the part of the defendant as to the cutting of those bananas contrary to the instructions which has been given. Under these circumstances, therefore, it would appear that not having authorized any variation from the orders which he had given, if such variation resulted in damage, the defendants had a right to recover the same from the plaintiffs.

The captain of the vessel, if he knew of the instructions and circumstances under which the order was given, would have been justified in refusing to accept the cargo. But by the acceptance of the goods the defendant in the first instance became liable for the purchase price, subject, however, to his right to offset any damages which he may have sustained by reason of the failure of the plaintiffs' agent to comply with the instructions which had been given.

The jury evidently found that the contract had not been modified, and that the defendant was entitled to be credited upon the purchase price with the amount of damages sustained by reason of the breach of the provision that bananas were not to be cut until after arrival of vessel. Hence no harm was done to the defendant by the submission of the question of modification to the jury. Indeed no objection seems to have been made to the submission of this question to the jury, the only point taken being that there could be no recovery at all if the jury found that the order had not been modified.

The case was thus submitted to the jury in as favorable light for the defendant as the facts proven permitted. The defendant could not accept the goods and sell them, and then, with the proceeds of sale in his pocket, refuse to pay any part of the purchase price.

As has been already stated, the agent of the defendant, the captain of the vessel, might have refused to accept the cargo because the bananas had been cut before arrival of the steamer, but having accepted them the defendant became liable for purchase price subject to deduction for damage sustained by reason of violation of contract.

These damages have been awarded the defendant by the jury. Their amount was to be determined by them, as there was some question as to whether the whole damage was caused by the fact of cutting before arrival.

The judgment and order appealed from should be affirmed, with costs.

DANIELS and BARRETT, JJ., concur.

NOTE ON " COUNTERCLAIM IN ACTION FOR PURCHASE PRICE."

The defendant, in a vendor's action to recover a balance of the purchase money of lands retained during the performance of certain stipulations, may set up as a counterclaim that he was induced to enter into the agreement, under which the money was withheld, by false representations on the part of the plaintiff to the effect that the stipulation in the original agreement, not referred to in the new agreement, had been fully performed. Disbrow v. Harris, 122 N. Y. 362.

A counterclaim for damages on an invalid sale of stock by one bank on behalf of another may be set up in an action for an accounting between them. Ulster Co. S. Inst. v. F. N. Bank, 54 Hun, 638.

A counterclaim for damages arising from a change in the place of delivery, which has been acquiesced in for a long time without complaint, is untenable. Gibson v. Donnelly, 37 N. Y. St. Rep. 500.

Where it appeared, in an action to recover the contract price of goods sold and delivered, that plaintiff, who was employed to "weld in" the heads of certain boiler pipes which had been ordered of defendant by a boiler company, knowing this fact, "sweated in" the heads instead, by reason of which they were rejected, and the boiler company put to expenses for which they charged defendant, it was held that such expenses were the natural consequences of plaintiff's breach of contract, and that defendant could set them up by way of counterclaim without first having paid the boiler company the amount. Eagle Tube Co. v. Edward Barr Co., 16 Daly, 212.

The vendor, in an action by the vendee, in an executory contract for the sale of real estate, to recover back the amount paid by him on the contract on the ground of defective title, may aver readiness and tender of the deed and set up a counterclaim for specific performance. Moser v. Cochrane, 117 N. Y. 35.

See note in 3 Sil. (Ct. of App.) 163.